IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONNECTICUT GENERAL LIFE     )
INSURANCE COMPANY,     )
     )
     Plaintiff/     )
     Counter-Defendant,     )
     )
v.     )     No. 13 C 4331
     )
GRAND AVENUE SURGICAL     )
CENTER, LTD.,     )
     )
     Defendant/     )
     Counter-Plaintiff.     )

<u>MEMORANDUM OPINION AND ORDER</u>

Connecticut General Life Insurance Company ("CT General") seeks a declaratory judgment that it owes Grand Avenue Surgical Center ("GASC") nothing for services provided to patients who were members of various health care plans that CT General administered and/or insured. GASC, citing CT General's alleged verifications of coverage before each patient's schedule procedure(s), has filed a counterclaim seeking payment based on state law theories of negligent misrepresentation and promissory estoppel.[1]

Two motions are currently pending: (1) CT General's motion to dismiss GASC's counterclaim as "completely" and "expressly"

---

[1] The same contentions are at issue in a related case in which GASC seeks reimbursement for services provided to only one patient, Toni E. *See Grand Ave. Surgical Ctr., Ltd. v. Conn. Gen. Life Ins. Co.*, No. 13 C 4994 (N.D. Ill.). This individual claim is subsumed within GASC's present counterclaim and will not be opposed by CT General on statute of limitations grounds. *Id.* at Dkt. No. 31 (CT General's stipulation).

preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and for failure to state a claim upon which relief may be granted and (2) GASC's motion for partial summary judgment on the ERISA preemption defenses.

I deny CT General's motion to dismiss and deny GASC's cross motion for partial summary judgment as moot for the reasons stated below.

I.

GASC is an "out-of-network" or "non-participating" provider with respect to the health care plans at issue in this case; that is, GASC has not contracted with CT General to accept discounted fees for treating eligible plan members. Compl. at ¶¶ 19-20.

CT General's declaratory judgment claim is based on allegations that GASC (1) waived or failed to collect charges billed to patients, such as coinsurance rates, copayments, and amounts necessary to meet plan deductibles and (2) accepted whatever reimbursement the patient's insurer provided as full payment for its services. The parties refer to these alleged practices as "fee forgiveness" in their respective pleadings.

According to CT General, GASC's practice of "fee forgiveness" triggers two provisions in each patient's health care plan that exclude coverage for:

1. charges which you [the plan member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan and

    2. charges which would not have been made if the person
       had no insurance.

Compl. at ¶ 18. CT General's basic contention is that when a

plan member is not legally obligated to pay any charges reflected

on a claim for benefits, neither the patient nor the provider

(when acting as assignee of the patient's plan benefits) is

entitled to payment or reimbursement.[2]

    Applying the plan exclusions quoted above to GASC's alleged

practice of fee forgiveness, CT General seeks declaratory

judgments that GASC is not entitled to reimbursement on (1)

twenty four claims that were paid in part between June 2008 and

June 2010 ("the disputed reimbursement claims") and (2) forty

nine claims that were denied in their entirety between June 2010

and August 2012 ("the fee forgiveness claims"). CT General also

seeks to recoup the amounts already paid to GASC on the disputed

reimbursement claims.

    In its counterclaim, GASC alleges that CT General confirmed

eligibility, coverage, and benefits before each patient's

scheduled procedure(s) and failed to disclose any limitations or

restrictions on coverage. Countercl. at ¶¶ 12-14. These

verifications of coverage allegedly created legal obligations

---

[2] I note that in signing GASC's payment guaranty and assignment
of benefits form, GASC's patients acknowledge that the assignment
"does NOT discharge my (our) obligation to pay for [GASC's]
services" at the regularly established rate and "merely provides
all powers necessary to GASC to obtain payment directly from my
(our) health insurance of health plan benefit administrator."
Compl. at Ex. 6 (emphasis in original).

independent from the terms of each patient's health care plan. *Id.* at ¶¶ 15-16. CT General counters that an automated disclaimer preceding each purported verification of coverage made everything said during such calls legally irrelevant and unenforceable.

II.

CT General seeks dismissal of GASC's counterclaim on three grounds:

1. ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) ("ERISA § 502(a)"), completely preempts the portion of GASC's counterclaim relating to patients whose health care plan is governed by ERISA[3];

2. ERISA's preemption provision, 29 U.S.C. § 1144(a), expressly preempts the portion of GASC's counterclaim relating to patients whose health care plan is governed by ERISA; and

3. GASC has failed to state a plausible claim that CT General made an unambiguous promise to pay for the services GASC provided to the patients at issue in this lawsuit.

GASC has filed a cross motion for partial summary judgment on the ERISA preemption defenses.

A.

CT General's complete preemption argument is unavailing and would not, in any event, automatically trigger dismissal of GASC's counterclaim.

---

[3] CT General asserts that forty one (41) of the fifty two (52) patients at issue in this case are covered by ERISA-regulated "employee welfare benefit plans." *See* Dkt. No. 39 at 2-3 (citing 29 U.S.C. § 1002(1)). Accordingly, I understand CT General's ERISA preemption arguments to be limited to these forty one (41) patients.

The doctrine of "complete preemption" captures the idea that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life. Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). "ERISA['s] civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Taylor*, 481 U.S. 58, 65-66 (1987)). The practical consequence of complete preemption is that "causes of action within the scope of the civil enforcement provisions of [ERISA] § 502(a) [are] removable to federal court." *Taylor*, 481 U.S. at 66.

The Seventh Circuit has described "complete preemption" as a "misnomer" because the doctrine has "nothing to do with preemption and everything to do with federal occupation of a field." *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000). "State law is 'completely preempted' in the sense that it has been replaced by federal law--but this happens because federal law takes over all similar claims, not because there is a preemption defense." *Id*. at 919-20; *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (suggesting that "complete displacement" is a better, less "clumsy" name than

"complete preemption"). Moreover, even when ERISA completely preempts a state claim, it does not follow that the claim should be dismissed. *See McDonald v. Household Intl., Inc.*, 425 F.3d 424, 428 (7th Cir. 2005) (rejecting argument that completely preempted claim must be dismissed or recharacterized as federal claim in an amended complaint); *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (same). The relevant question remains whether the complaint, which need not contain legal theories, states a plausible claim for relief.

With diversity jurisdiction firmly established in this case, *see* Answer at ¶ 7, complete preemption is relevant only because GASC's counterclaim, if converted into a federal claim arising under ERISA, will be subject to a more stringent legal standard than an Illinois common law claim. *Compare Orth v. Wisc. St. Employees Union, Council 24*, 546 F.3d 868, 873 (7th Cir. 2008) (holding, in accordance with statutory requirement that ERISA plans must be "maintained in writing," 29 U.S.C. § 1102(a)(1), that estoppel claims under ERISA must be based on a written promise or some other writing) *with Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 826 N.E.2d 970 (Ill. App. Ct. 2005) (reversing dismissal of healthcare provider's state law promissory estoppel claim against insurer without requiring alleged promise to appear in writing). GASC has not alleged that CT General verified coverage in writing or otherwise made a written promise to pay for any scheduled procedures.

Accordingly, if GASC's counterclaim actually arises under ERISA by virtue of complete preemption, dismissal for failure to state a plausible claim may be appropriate.

2.

The Supreme Court has established a two-part test for determining whether a state law claim falls within the scope of ERISA § 502(a) and should be recharacterized as a federal claim. ERISA completely preempts a purported state law claim brought (1) by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)"[4] and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

With regard to the first prong of the *Davila* test, I conclude that GASC's promissory estoppel counterclaim could not have been brought under ERISA § 502(a). When faced with an almost identical ERISA preemption question, the Seventh Circuit held that a healthcare provider's promissory estoppel claim was not a wrongful denial of benefits claim in state law disguise. *See Franciscan Skemp Healthcare, Inc. v. Central States Joint Board Health and Welfare Trust Fund*, 538 F.3d 594, 598 (7th Cir.

---

[4] ERISA § 502(a)(1)(B) authorizes a plan participant or beneficiary to file suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(N); *see also Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) (holding that healthcare provider holding valid assignment of plan member's benefits may sue under ERISA § 502(a)(1)(B)).

2008); *accord Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
581 F.3d 941 (9th Cir. 2009) (applying *Davila* test and holding
that provider's state law estoppel claim against ERISA plan
administrator was not completely preempted). Here, as in
*Franciscan Skemp*, the provider's promissory estoppel claim
"arise[s] not from the plan or its terms, but from the alleged
oral representations made by [the plan administrator] to [the
provider]." 538 F.3d at 597. This claim can be resolved without
reference to the terms of any patient's health care plan. GASC
is, if anything, agnostic about whether CT General's benefits
determinations were a correct application of plan terms or
violated any fiduciary duties CT General might owe under ERISA.

CT General attempts to distinguish *Franciscan Skemp* on the
ground that the patient in that case was not covered by an ERISA
plan when she received treatment, so the provider was necessarily
suing in its own right rather than as each patient's assignee.
*See Franciscan Skemp*, 538 F.3d at 598 (noting that patient lost
coverage by failing to make timely COBRA payments). This
argument is unavailing. The Seventh Circuit did not conclude
that Franciscan Skemp was suing in its own right because a
hypothetical suit to recover plan benefits would have been
futile. "The key to the decision in *Franciscan Skemp* was the
fact that the misrepresentation claim stood alone and did not
rely on the plan." *Oak Brook Surgical Centre, Inc. v. Aetna,
Inc.*, 863 F.Supp.2d 724, 731 (N.D. Ill. 2012) (rejecting argument

that "misrepresentations about coverage can only escape the reach of ERISA preemption if there is no underlying ERISA coverage," *id.* at 728). The same factual predicate from *Franciscan Skemp* exists in this case: GASC's promissory estoppel counterclaim can be resolved without reference to any patient's health plan. Therefore, the counterclaim does not fall within ERISA § 502(a)(1)(B)'s right of action.

The fact that GASC holds a valid assignment of benefits from each patient does not *ipso facto* transform its counterclaim into a wrongful denial of benefit challenge.[5] "Simply because at one point in time [GASC] acknowledged an assignment [of plan benefits] from [its patients] does not mean that it simultaneously and implicitly gave up any claim(s) it had against [the plan or plan administrator] apart from that assignment." *Franciscan Skemp*, 538 F.3d at 598. *Davila* requires a close, rather than facile, examination of the GASC's complaint to determine whether its counterclaim is brought as the assignee of each patient's plan benefits or in its own right. *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (first prong of *Davila* test asks "whether the *actual claims*...assert[ed] can be construed as colorable claims for

---

[5] GASC has not disputed that it takes an assignment of each patient's plan benefits before providing care. Compl. at ¶ 34.

benefits pursuant to [ERISA] § 502(a)(1)(B) (emphasis in original).[6]

In *Franciscan Skemp*, not even a request that the defendant "be estopped from denying coverage benefits for [a plan member's] medical services" was sufficient to transform the complaint into one seeking ERISA plan benefits. 538 F.3d at 597-98. It follows that GASC's counterclaim, which explicitly disavows reliance on CT General's contractual obligations to any plan members, is not a disguised denial of benefits claim. *See e.g.*, Countercl. at ¶ 10 (noting that GASC brings counterclaim "in its own right"), ¶ 16 (asserting that CT General's obligations to GASC are "independent of the obligations [CT General] may owe to their Members under any insurance contract"), ¶ 25 (seeking payment of benefits "in amounts consistent with the statements [CT General's] agents made while confirming insurance coverage"). At the end of the day, CT General's complete preemption argument rests on nothing more than its *ipse dixit* that "the nub of

---

[6] In *Montefiore*, the Second Circuit held that a healthcare provider's estoppel claim against an ERISA plan administrator based on verbal confirmations of coverage was completely preempted. *Montefiore* is not controlling in this Court. Moreover, the case is distinguishable because *Montefiore* involved an in-network provider (1) whose legal relationship with the defendant was defined by the terms of an ERISA plan and (2) whose estoppel claim rested on a "pre-approval process" that "was *expressly required by the terms of the Plan itself* and is therefore inextricably intertwined with the interpretation of Plan coverage and benefits." 642 F.3d at 332 (emphasis in original).

[GASC's] complaint is [CT General's] failure to make benefit payments under an ERISA plan." Dkt. No. 15 at 9.

CT General's complete preemption argument also fails the second prong of the *Davila* test--i.e., GASC's counterclaim implicates legal duties independent of ERISA. A promissory estoppel claim "derive[s] from duties imposed apart from ERISA and/or [any] plan terms: [Illinois] law defines those duties." *Franciscan Skemp*, 538 F.3d at 598; *see also Montefiore*, 642 F.3d at 328 (noting that claim which "*could* have been brought under ERISA, but *also* rests on '[an]other independent legal duty that is implicated by [the] defendant's actions'" fails the second prong of the *Davila* test) (emphasis in original).

In sum, GASC's counterclaim is not subject to complete preemption under ERISA and therefore will not be transformed into a federal claim for purposes of analyzing CT General's motion to dismiss. The counterclaim must be evaluated on its own terms under Illinois law.

B.

CT General's second argument for dismissal is that ERISA § 514(a) expressly preempts GASC's promissory estoppel counterclaim. "Conflict preemption [under ERISA § 514(a)], unlike complete preemption, actually is a true preemption doctrine." *Franciscan Skemp*, 538 F.3d at 601. Although GASC is not required to overcome affirmative defenses at the pleading

stage, I address the issue of conflict preemption now because it presents a pure question of law.

Subject to a savings clause that is not relevant here, ERISA § 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). This "broadly worded provision routinely preempts state law claims that affect the structuring of ERISA plans, or that purport to determine the substantive rights and duties among parties to its creation and administration." *Rice v. Panchal*, 65 F.3d 637, 645 (7th Cir. 1995) (collecting cases); *see also Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir. 1992) (noting that ERISA § 514(a) "knocks out any effort to use state law, including state common law, to obtain benefits under [an ERISA-regulated] plan").

Despite its breadth, ERISA § 514(a) does not preempt a state claim "that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 139-40 (1990). Where a court can resolve the merits of a claim without interpreting or applying the terms of any ERISA-regulated health plan, ERISA § 514(a) does not preempt the claim. *See Kolbe v. Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisc., Inc.*, 657 F.3d 496, 504-5 (7th Cir. 2011) (finding no conflict preemption under ERISA § 514(a) where state law claim did not require interpretation or

application of plan provisions); *Trs. of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002) (same).

My complete preemption analysis has already established that GASC's counterclaim is not premised on the existence of an ERISA-regulated health care plan or an asserted entitlement to benefits under any such plan.  It follows that the counterclaim does not "relate" to any ERISA plan in the manner required for conflict preemption under § 514(a).  This conclusion is consistent with the overwhelming weight of appellate authority, including four conflict preemption cases cited with approval in *Franciscan Skemp*, all of which hold that ERISA § 514(a) does not preempt a third party provider's negligent misrepresentation claim against an ERISA plan administrator.[7]  *See* 538 F.3d at 599 (citing *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604-7 (8th Cir. 1996); *Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008-10 (9th Cir. 1995); *Hospice of Metro Denver v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752, 754 (10th Cir. 1991); and *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243-50 (5th Cir. 1990)); *see also Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011)

---

[7] The precise language from *Franciscan Skemp* approving of the conflict preemption cases is as follows: "[W]e cite these cases not for their analytical frameworks, where we might find disagreement and where we opt for the method outlined in *Davila*, but for the inherent logic of their outcomes, which supports the notion that state-law claims brought by third-party healthcare providers, in situations analogous to the one with which we are now faced, are independent of ERISA and not completely preempted."  538 F.3d at 600 (internal citation omitted).

(finding no conflict preemption under ERISA § 514(a) because "state law underlying [medical device company's] misrepresentation claims does not purport to regulate what benefits [plan administrator] provides to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services."); *Oak Brook Surgical*, 863 F.Supp.2d at 730-31 ("A third-party provider's misrepresentation claim...is not constrained by the plan because it...is simply not related to the plan in any substantive way since its fate depends on what the plan administrator said upon inquiry, not upon the language of the plan itself.").

In sum, the overwhelming weight of authority, much of which was cited with approval in *Franciscan Skemp*, holds that ERISA § 514(a) does not preempt GASC's promissory estoppel counterclaim.

### C.

GASC's cross motion for partial summary judgment on the CT General's ERISA preemption defenses is denied as moot for the reasons stated above.

### III.

CT General's final argument is that GASC's counterclaim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

In light of my holding that ERISA's complete preemptive power does not transform GASC's counterclaim into a federal cause

of action, I must determine whether GASC has stated a plausible

claim under Illinois law.

> To establish a claim based on promissory estoppel,
> plaintiff must allege and prove that (1) defendants
> made an unambiguous promise to plaintiff, (2) plaintiff
> relied on such promise, (3) plaintiff's reliance was
> expected and foreseeable by defendants, and (4)
> plaintiff relied on the promise to its detriment.
> Plaintiff's reliance must be reasonable and
> justifiable.

*Chatham*, 826 N.E.2d at 800 (quoting *Quake Constr., Inc. v. Am.*

*Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990)).

CT General argues that GASC's counterclaim fails to allege

an unambiguous promise to pay. This argument has no merit. The

Illinois Appellate Court has held that a health insurer's verbal

representation to a third-party provider that a patient is

covered constitutes an unambiguous promise to pay at the pleading

stage. *See Chatham*, 826 N.E.2d at 976-77; *see also Children's*

*Mem. Hosp. v. Wilbert, Inc. Health Plan*, 733 F.Supp.2d 961, 965

(N.D. Ill. 2010) (holding that plan administrator's

representation that "coverage was available and that benefits had

not been exhausted [was] sufficient to satisfy plaintiff's

pleading requirement"); *Rehabilitation Institute of Chicago v.*

*Group Administrators, Ltd.*, 844 F.Supp. 1275, 1279 (N.D. Ill.

1994) (holding that plan administrator's statement that "coverage

was available" satisfied promise element of promissory estoppel

claim).

Here, GASC has alleged that CT General "confirmed eligibility, coverage and benefits for [each patient's] scheduled procedure" and "never disclosed coverage and/or limitations or restrictions." Countercl. at ¶ 14. These allegations are analogous to the unambiguous promises alleged in *Chatham*, which survived the plan administrator's motion to dismiss. CT General has not cited any cases calling *Catham* into doubt or indicating that the Illinois Supreme Court would require a third-party provider to plead an unambiguous promise in greater detail. Accordingly, I conclude that GASC has satisfied its burden under Rule 12(b)(6) to allege an unambiguous promise that CT General would pay for the scheduled procedures.

CT General also argues that GASC's alleged reliance on verifications of coverage preceded by an automated disclaimer was not reasonable or foreseeable--particularly not after CT General sent GASC a letter in March 2010 warning that no claims would be paid until GASC proved that it was not engaging in fee forgiveness. CT General's argument goes to the merits of the case and cannot be resolved at the pleading stage, when I must view the counterclaim in the light most favorable to GASC. It may be that GASC's reliance on CT General's verifications of coverage was unreasonable in the first instance or became unreasonable over time, but the reliance alleged in GASC's counterclaim is not unreasonable as a matter of law.

IV.

CT General's motion to dismiss GASC's counterclaim (Dkt. No. 14) and GASC's cross motion for partial summary judgment on the ERISA preemption defense (Dkt. No. 47) are DENIED for the reasons stated above.

**ENTER ORDER:**

Elaine E. Bucklo
United States District Judge

Dated: January 14, 2014